1    Jana Logan (CA Bar No. 171152)
     KIRBY & McGUINN, A P.C.
2    600 B Street, Suite 1950
     San Diego, California 92101-4515
3    Telephone:  (619) 685-4000
     Facsimile:  (619) 685-4004
4

5    Attorneys for Plaintiff
     CALIFORNIA RECONVEYANCE COMPANY
6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11    CALIFORNIA RECONVEYANCE    )   Case No.
     COMPANY, a California corporation   )
12                          )   **CV 08 - 01643**
             Plaintiff,      )
13                          )   **COMPLAINT IN INTERPLEADER**
14    v.                        )   [28 U.S.C. § 1335]
                         )
15    UNITED STATES OF AMERICA,     )
     acting through the Internal Revenue   )
16    Service; IICDG FAMILY LIMITED   )
     PARTNERSHIP, a Nevada entity;     )
17    COUNTRYWIDE HOME LOANS,     )
     INC., a New York corporation; and    )
18    STATE OF CALIFORNIA, through the )
     California State Controller's Office   )
19                          )
                         )
20              Defendants.     )
     _____)

21        CALIFORNIA RECONVEYANCE COMPANY, a California corporation

22    ("CRC") for itself alone alleges as follows:

23                    **JURISDICTION AND VENUE**

24       1.     Jurisdiction of the United States District Court for the Central District of

25    California is founded upon 28 United States Code Sections 1335, 1346(f), 2361 and

26    2410 in that this case involves the deposit of surplus funds in interpleader from a non-

27    judicial foreclosure sale of real property in which the United States of America, acting

28    through the Internal Revenue Service has a tax lien.

1  2.    Venue is proper in the Eastern Division of the Central District of California

2  under 28 United States Code Section 1402(d) in that the real property which is the

3  subject of this action is located within the County of Riverside where the court is located.

4                              **GENERAL ALLEGATIONS**

5  3.    Plaintiff is a corporation organized and existing under the laws of the State

6  of California.

7  4.    Plaintiff presently holds sum of $91,802.54 in undistributed sales proceeds

8  ("the Surplus Funds") remaining after non-judicial foreclosure sale on real property

9  commonly known as **37275 Wyndham Road, Palm Desert, California 92211** (the

10  "Property").  The Surplus Funds are the subject of multiple, disputed and conflicting

11  claims of the defendants, as more particularly set forth herein.

12  5.    The United States of America, acting through the Internal Revenue Service,

13  recorded Notices of Tax Lien in the sum of $289,261.93, $10,543.98 and $413,624.21

14  and $261,659.86 against the Property for taxpayer Julius Schill as recorded on February

15  5, 2001, February 14, 2001 and November 25, 2002, in the Official Records of the Clerk-

16  Recorder, County of Los Angeles, California (the "Tax Liens").

17  6.    Plaintiff is informed and believes and thereon alleges that defendant, IICDG

18  Family Partnership ("IICDG") is, and at all times mentioned herein was, the former

19  owner of the Property at the time of foreclosure.  Karen H. Schill, as General Partner of

20  the IICDG Family Partnership, disputes the IRS lien claims regarding the distribution of

21  the Surplus Funds, which conflicts with, or is at adverse to, the claims to the other

22  defendants herein.

23  7.    Plaintiff is informed and believes and thereon alleges that defendant,

24  Countrywide Home Loans, Inc. ("Countrywide"), is and at all times is a New York

25  corporation who claims an interest in the Surplus Funds as a trust deed lien claimant,

26  which conflicts with, or is adverse to the claims of the other defendants herein.

27  / / /

28  / / /

1    8.    Plaintiff is informed and believes and thereon alleges that Defendants, State
2  of California, through the State Controller's Office, claims interests in the Surplus Funds
3  as a lien claimant, which conflicts with, or is adverse to, the claims of the other
4  defendants herein.

5    9.    Plaintiff is informed and believes and thereon alleges that each of the
6  defendants is, and at all times herein mentioned, was the agent and/or employee of his,
7  its, or co-defendants, in committing the acts herein alleged, was acting within the scope
8  of his, its or their authority as such agent and/or employee and with the permission and
9  consent of his, its, their co-defendants.

10              **FIRST CLAIM FOR RELIEF FOR INTERPLEADER**
11                    **(AGAINST ALL DEFENDANTS)**

12    10.   Plaintiff realleges paragraphs 1 through 9 as though fully set forth herein.

13    11.   Plaintiff is, and at all times mentioned herein was, the trustee under that
14  certain deed of trust executed by Julius F. Schill and Karen H. Schill, husband and wife
15  ("Schill"). The Schill's executed a deed of trust originally in favor of Washington
16  Mutual Bank, FA, a corporation, as beneficiary, dated September 17, 1999, and recorded
17  as Instrument No. 1999-427709 in the Official Records of Riverside County, State of
18  California (the "Trust Deed"). The Trust Deed secured a promissory note in the original
19  sum of $238,850.00 dated September 17, 1999 in favor of Washington Mutual Bank (the
20  "Note").

21    12.   California Reconveyance Company is the foreclosure trustee for
22  Washington Mutual Bank.

23    13.   On or about January 22, 2008, pursuant to its power of sale under the Trust
24  Deed, Plaintiff conducted a non-judicial foreclosure sale of the Property. The Property
25  was sold to the highest bidder, a third party, and resulted in surplus funds. A true and
26  correct copy of the Trustee's Deed Upon Sale dated February 1, 2008 is attached hereto
27  and incorporated herein by reference as Exhibit "A".

28    14.   After payment of the foreclosing beneficiary's debt, trustee's fees and costs

---

1  pursuant to California Code of Civil Procedure §§ 2924d and 2924k, and the $350.00
2  filing fee for the instant Complaint, Surplus Funds of $91,802.54 remain from the
3  foreclosure sale.

4  **CLAIMS TO THE SURPLUS FUNDS AND THE DISPUTE**

5       15.    The Defendants' respective claims to the surplus funds are adverse and
6  conflicting.  By reason of these multiple and conflicting claims, despite its exhaustive
7  exercise of due diligence, Plaintiff is unable to safely determine which of the
8  Defendant's claims, if any, are valid, and which of the Defendants are entitled to the
9  Surplus Funds.  A true and correct copy of the Trustee Sale Guarantee reflecting the
10 various liens against the Property is attached hereto and incorporated herein by reference
11 as Exhibit "B".  The lien claimants in order of priority are:

| Claim | Junior Lienholder | Lien Recorded | Amount of lien | Amount of Claim |
|-------|-------------------|---------------|----------------|-----------------|
| 1 | Internal Revenue Service (Tax period - 1990-1991) (Assessed 2/7/2000) | 02/05/01 | $289,261.93 | $757,683.18 |
| 2 | Internal Revenue Service (Tax period - 1994) (Assessed 11/13/2000) | 02/14/01 | $10,543.98 | Included in above |
| 3 | Internal Revenue Service (Tax period - 1992) (Assessed 2/21/2000) | 11/25/01 | $ 413,624.21 | Included in above |
| 4 | State of California - Franchise Tax Board (for years 1194,1993, 1992, 1991, 1990) | 11/25/02 | $261,659.86 | $0.00 Waived by FTB |
| 5 | Countrywide Home Loans | 12/30/04 | $200,000.00 | $214,921.33 |
| 6 | State of California (Real Property Tax Postponement) | 02/22/07 | | $4,101.59 |
| | Total Claims | | | $976,706.10 |

1  The claims total $976,706.10 which is $884,903.56 more than the available surplus
2  funds.

3      16.   On or about February 26, 2005, pursuant to California Civil Code §
4  2924j(a), Plaintiff sent a letter to all parties with recorded interests in the Property,
5  notifying that surplus funds remained after the sale.   The letter, in accordance with
6  California Civil Code § 2924j(a), informed the parties with recorded interest (1) there
7  was a trustee sale of the Property; (2) the noticed party that had a claim as to all or a
8  portion of the surplus funds after payment of fees and costs in connection with the sale
9  and investigation of claims and disbursement of funds; (3) the noticed party may contact
10 the trustee as the address provided in the letter regarding any potential claims; and (4)
11 the noticed party shall submit a written claim to the trustee, executed under penalty of
12 perjury, setting forth the amount of the claim due to the date of sale and including an
13 itemized statement of the amount due. A true and correct copy of a sample letter sent by
14 CRC and an Affidavit of Mailing showing the names and addresses to which it was
15 mailed are attached hereto and incorporated herein by this reference collectively as
16 Exhibit "C".

17     17.   On or about March 20, 2008, lien claimant priority No. 6, the State of
18 California, State Controller's Office, made a claim in the amount $4,101.59 to the
19 surplus fund. A true and correct copy of the State of California's claim is attached hereto
20 as Exhibit "D" and incorporated herein by reference.

21     18.   On or about April 8, 2008, the Internal Revenue Service, lien claimant
22 priorities Nos. 1-3, made a claim in the amount of $757,683.18 based on its liens as set
23 forth above. A true and correct copy of the IRS claim and supporting documents are
24 attached hereto as Exhibit "E" and incorporated herein by reference.   Karen Schill,
25 general partner of IICDG objects to the payment of the IRS liens by alleging that at the
26 time the IRS lien was filed Julius Schill had no partnership interest in t IICDG and
27 IICDG believes that the surplus funds are its [IICDG's] property. Based upon IICDG's
28 dispute of liens No. 1-3, the IRS claim has not been paid. See, Exhibit "F"

1      19.    On or about May 9, 2008, the State of California - Franchise Tax Board
2  (FTB), lien priority claimant No. 4, advised CRC's counsel that the FTB would not be
3  filing a claim to the excess proceeds. A true and correct copy of the FTB Notice of State
4  Tax lien and the e-mail correspondence regarding the "no claim" are attached hereto as
5  Exhibit "G" and incorporated herein. The FTB has not been named as a defendant
6  claimant as a result of its waiver to the excess proceeds.

7      20.    On or about June 17, 2008, lien claimant priority No. 5,Countrywide Home
8  Loans, Inc., made a claim to the surplus funds in the amount of $214,921.33. A true and
9  correct copy of the Countrywide claim is attached hereto as Exhibit "H" and incorporated
10  herein by reference. In November 2008, Countrywide, through its attorneys, has opted
11  to not participate in this interpleader lawsuit. CRC intends to request a Disclaimer of
12  Interest from Countrywide once the lawsuit is filed if Countrywide does not want to
13  participate in the interpleader.

14  **TRANSFERS OF THE PROPERTY**

15      21.    On or about November 10, 1999, Julius F. Schill and Karen H. Schill, as
16  Joint Tenants with Right of Survivorship transferred title of the Property to IICDG
17  Family Limited Partnership by Grant Deed dated November 10, 1999 and recorded on
18  November 10, 1999 as Doc # 1999-496534 in the Office of the County Recorder of
19  Riverside County, California. A true and correct copy of the Grant Deed is attached
20  hereto as Exhibit "I" and incorporated herein by mention.

21      22.    On or about December 10, 2004, IICDG Family Limited Partnership
22  transferred title of the Property to Karen H. Schill, a married woman, as her sole and
23  separate property by Grant Deed dated December 10, 2004and recorded on December
24  30, 2004 as Doc # 2004-1032726 in the Office of the County Recorder of Riverside
25  County, California. A true and correct copy of the Grant Deed is attached hereto as
26  Exhibit "J" and incorporated herein by mention.

27  / / /

28  / / /

23. CRC cannot determine, based upon the information made available to it prior to filing this action, the validity of the Internal Revenue Service's liens and subsequent claim due to the dispute of the IRS claim by Ms. Schill and IICDG. Because the IRS appears to have recorded lien priority over the Countrywide lien, CRC is unable to disburse its surplus funds to Countrywide either.

24. Plaintiff is indifferent with respect to which of the Defendants is entitled to receive the Surplus Funds.

25. Plaintiff only has an interest in the outcome of the litigation as the holder of the Surplus Funds obtained from the Property which is the subject of this complaint.

26. Plaintiff will deposit the sum of $91,804.54, being the entire amount of Surplus Funds, with the registry of this Court upon leave of this Court.

27. Plaintiff has incurred and will continue to incur reasonable attorney's fees and costs as a result of this proceeding. Plaintiff claims no interest in the Surplus Funds or any portion thereof, except Plaintiff's reasonable attorney's fees and costs incurred in connection with this matter.

**WHEREFORE**, Plaintiff prays as follows:

1. That Defendants, and each of them, be ordered to interplead and litigate their respective rights to the surplus funds in this action;

2. That Defendants be restrained from or further prosecuting any action against Plaintiff with respect to the party's respective claims to the Surplus Funds pending further order of this Court;

3. Plaintiff be discharged from any and all liability on account of the claims of each of the Defendants herein;

4. Plaintiff be awarded its reasonable attorney's fees and costs to be determined by the Court and paid out of the Surplus Funds deposited with the Court; and

/ / /

/ / /

/ / /

5. For such other and further relief this Court may deem proper.

DATED: November 12, 2008 **KIRBY & McGUINN, A P.C.**

By: _____
    JANA LOGAN
    An associate of Kirby & McGuinn, A P.C.
    Attorneys for Plaintiff, CALIFORNIA
    RECONVEYANCE COMPANY

WHEN RECORDED MAIL TO:
COUNTRYWIDE BANK

MAIL TAX STATEMENTS TO:
COUNTRYWIDE BANK
450 AMERICAN STREET, MSP SV-73
SIMI VALLEY, CA 93065

Space above this line for recorder's use only

Trustee Sale No. 122137CA    Loan No. 0026549295    Title Order No. M713725

# TRUSTEE'S DEED UPON SALE

APN 748-020-061-2   T.R.A. No.
The undersigned grantor declares:
1)   The Grantee herein <u>was not</u> the foreclosing beneficiary.
2)   The amount of the unpaid debt together with costs was ...................$227,819.78
3)   The amount paid by the grantee at the trustee sale was...................$320,000.00
4)   The documentary transfer tax is ......................................................$
5)   Said property is in PALM DESERT
and CALIFORNIA RECONVEYANCE COMPANY (herein called Trustee), as the duly appointed Trustee or substituted Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to **COUNTRYWIDE BANK, FSB** (herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of RIVERSIDE, State of California, described as follows: **LOT 201 OF TRACT 28243 AS SHOWN BY MAP ON FILE IN BOOK 267 PAGES 55 THROUGH 63, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.**

Situs: 37275 WYNDHAM ROAD, , PALM DESERT, CA 92211
RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 09/17/1999 and executed by JULIUS F. SCHILL AND KAREN H. SCHILL, HUSBAND AND WIFE, as Trustor, and Recorded 09/24/1999, Book , Page , Instrument 1999-427709 of official records of RIVERSIDE County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

# Exhibit "A", Page 1 of 2

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on 01/22/2008. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being $320,000.00 in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said Trustee's Sale.

DATE: 02/01/2008

CALIFORNIA RECONVEYANCE COMPANY, as Trustee

COLLEEN IRBY, ASSISTANT SECRETARY

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On February 01, 2008 before me, SIERRIE HERRADURA, "Notary Public" personally appeared COLLEEN IRBY, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____(Seal)

SIERRIE HERRADURA
Commission # 1468466
Notary Public - California
Los Angeles County
My Comm. Expires Feb 6, 2008

**Exhibit "A", Page 2 of 2**

**LSI TITLE COMPANY (CA)**
ISSUED BY FIDELITY NATIONAL DEFAULT SOLUTIONS
15661 RED HILL AVENUE, SUITE 201, TUSTIN, CALIFORNIA 92780
(949) 622-4200 • (800) 323-0165

### TRUSTEE SALE GUARANTEE

### SCHEDULE A

| | |
|---|---|
| GUARANTEE NO.: | 27-092-01-120527 |
| REF NO.: | 122137CA |
| LOAN NO.: | 0026549295 |
| ORDER NO.: | M713725 |
| COUNTY REF. NO.: | M713725 |
| PREMIUM: | $450.00 |
| LIABILITY: | $214,000.00 |
| DATED: | SEPTEMBER 24, 2007 @ 8:00 A.M. |

1.  NAME(S) OF ASSURED:

    TRUSTEE:       CALIFORNIA RECONVEYANCE COMPANY

    BENEFICIARY:   WASHINGTON MUTUAL BANK, FA

2.  THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED, OR REFERRED TO, AND COVERED BY THIS GUARANTEE IS:

    A FEE

3.  TITLE TO SAID ESTATE OR INTEREST, AT THE DATE HEREOF, IS VESTED IN:

    KAREN H. SCHILL, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

4.  THE LAND REFERRED TO IN THIS GUARANTEE IS SITUATED IN THE (UNINCORPORATED AREA), COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

    SEE EXHIBIT "A"

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

## EXHIBIT A

### LEGAL DESCRIPTION

REF. NO. 122137CA

LOT 201 OF TRACT 28243 AS SHOWN BY MAP ON FILE IN BOOK 267 PAGES 55 THROUGH 63, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

## EXCEPTIONS

1.  PROPERTY TAXES, WHICH ARE A LIEN NOT YET DUE AND PAYABLE, INCLUDING ANY ASSESSMENTS COLLECTED WITH TAXES TO BE LEVIED FOR THE FISCAL YEAR 2007-2008.

2.  PROPERTY TAXES, INCLUDING ANY PERSONAL PROPERTY TAXES AND ANY ASSESSMENTS COLLECTED WITH TAXES, FOR THE FISCAL YEAR 2006-2007, ASSESSOR'S PARCEL NUMBER 748-020-061-2.

| | | |
|---|---|---|
| TOTAL AMOUNT | : | $3,953.94 |
| 1ST INSTALLMENT | : | $1,976.97 (PAID) |
| 2ND INSTALLMENT | : | $1,976.97 (PAID) |
| LAND | : | $56,233.00 |
| IMPROVEMENT | : | $272,510.00 |
| CODE AREA | : | 075-135 |
| EXEMPTION | : | $7,000.00 |

3.  THE LIEN OF SUPPLEMENTAL TAXES, IF ANY, ASSESSED PURSUANT TO THE PROVISIONS OF CHAPTER 3.5 (COMMENCING WITH SECTION 75) OF THE REVENUE AND TAXATION CODE OF THE STATE OF CALIFORNIA.

4.  ASSESSMENTS, IF ANY, FOR COMMUNITY FACILITY DISTRICTS AFFECTING SAID LAND WHICH MAY EXIST BY VIRTUE OF ASSESSMENT MAPS OR NOTICES FILED BY SAID DISTRICTS

A.  ANY UNPAID AND/OR DELINQUENT BOND OR ASSESSMENT AMOUNTS WHICH MAY HAVE BEEN REMOVED FROM THE ROLLS OF THE COUNTY TAX ASSESSOR AND WHICH MAY HAVE BEEN REMOVED FROM TAX BILLS AND TAX DEFAULT REDEMPTION AMOUNTS.

5.  ESTATES OR INTERESTS IN OR ENCUMBRANCES OR LIENS ON THE LAND, SHOWN BY THE PUBLIC RECORDS (INCLUDING BUT NOT LIMITED TO EASEMENTS, LEASES, MINERAL INTERESTS, CONTRACTS OF SALE, COVENANTS, CONDITIONS AND RESTRICTIONS).

6.  A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW, AND ANY OTHER OBLIGATIONS SECURED THEREBY

| | | |
|---|---|---|
| AMOUNT | : | $238,850.00 |
| DATED | : | SEPTEMBER 17, 1999 |
| TRUSTOR | : | JULIUS F. SCHILL AND KAREN H. SCHILL, HUSBAND AND WIFE |
| TRUSTEE | : | CALIFORNIA RECONVEYANCE COMPANY |
| BENEFICIARY | : | WASHINGTON MUTUAL BANK, FA |
| RECORDED | : | SEPTEMBER 24, 1999 AS INSTRUMENT NO. 1999-427709, OF OFFICIAL RECORDS |

A NOTICE OF DEFAULT UNDER THE TERMS OF SAID DEED OF TRUST

| | | |
|---|---|---|
| RECORDED | : | SEPTEMBER 24, 2007 AS INSTRUMENT NO. 2007-0599186, OF OFFICIAL RECORDS |

ORDER NO: M713725                                              GUARANTEE NO: 27-092-01-120527

7.      A DEED OF TRUST TO SECURE AN INDEBTEDNESS IN THE AMOUNT SHOWN BELOW, AND ANY
        OTHER OBLIGATIONS SECURED THEREBY

| | | |
|---|---|---|
| AMOUNT | : | $200,000.00 |
| DATED | : | DECEMBER 1, 2004 |
| TRUSTOR | : | KAREN H. SCHILL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY |
| TRUSTEE | : | MARIN CONVEYANCING CORP. |
| BENEFICIARY | : | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A SEPARATE CORPORATION THAT IS ACTING SOLELY AS A NOMINEE FOR LENDER AND LENDER'S SUCCESSORS AND ASSIGNS |
| LENDER | : | GREENPOINT MORTGAGE FUNDING, INC., A CORPORATION |
| RECORDED | : | DECEMBER 30, 2004 AS INSTRUMENT NO. 2004-1032727, OF OFFICIAL RECORDS |

8.      A LIEN TO SECURE ALL SUMS DUE THE CONTROLLER OF THE STATE OF CALIFORNIA FOR
        POSTPONED REAL PROPERTY TAXES ON SAID LAND, EVIDENCED BY A NOTICE OF LIEN

| | | |
|---|---|---|
| RECORDED | : | FEBRUARY 22, 2007 AS INSTRUMENT NO. 2007-0122787, OF OFFICIAL RECORDS |
| CONTROLLERS ID NO. | : | 748020061-2 |
| FOR FISCAL YEAR OF POSTPONED TAX | : | (NONE SHOWN) |

9.      A TAX LIEN FOR THE AMOUNT SHOWN AND ANY OTHER AMOUNTS DUE, IN FAVOR OF THE
        UNITED STATES OF AMERICA, ASSESSED BY THE DISTRICT DIRECTOR OF INTERNAL
        REVENUE.

| | | |
|---|---|---|
| FEDERAL SERIAL NO. | : | 330184304 |
| TAXPAYER | : | JERRY SCHILL AKA JULIUS SCHILL |
| AMOUNT | : | $289,261.93 |
| RECORDED | : | FEBRUARY 5, 2001 AS INSTRUMENT NO. 2001-048928, OF OFFICIAL RECORDS |

10.     A TAX LIEN FOR THE AMOUNT SHOWN AND ANY OTHER AMOUNTS DUE, IN FAVOR OF THE
        UNITED STATES OF AMERICA, ASSESSED BY THE DISTRICT DIRECTOR OF INTERNAL
        REVENUE.

| | | |
|---|---|---|
| FEDERAL SERIAL NO. | : | 330184830 |
| TAXPAYER | : | JULIUS SCHILL |
| AMOUNT | : | $10,543.98 |
| RECORDED | : | FEBRUARY 14, 2001 AS INSTRUMENT NO. 2001-061126, OF OFFICIAL RECORDS |

11.     A TAX LIEN FOR THE AMOUNT SHOWN AND ANY OTHER AMOUNTS DUE, IN FAVOR OF THE
        UNITED STATES OF AMERICA, ASSESSED BY THE DISTRICT DIRECTOR OF INTERNAL
        REVENUE.

| | | |
|---|---|---|
| FEDERAL SERIAL NO. | : | 102366202 |
| TAXPAYER | : | JULIUS F SCHILL |
| AMOUNT | : | $413,624.21 |
| RECORDED | : | NOVEMBER 25, 2002 AS INSTRUMENT NO. 2002-694440, OF OFFICIAL RECORDS |

# Exhibit "B", Page 4 of 15

ORDER NO: M713725                                          GUARANTEE NO: 27-092-01-120527

12.    A TAX LIEN FOR THE AMOUNT SHOWN AND ANY OTHER AMOUNTS DUE, IN FAVOR OF THE
       STATE OF CALIFORNIA.

       AMOUNT                    :    $261,659.86
       FILED BY                  :    FRANCHISE TAX BOARD
       TAXPAYER                  :    JULIUS SCHILL
       CERTIFICATE NO.           :    02316479144
       RECORDED                  :    NOVEMBER 25, 2002 AS INSTRUMENT NO. 2002-697302,
                                      OF OFFICIAL RECORDS

13.    THE LATEST TAX ROLL INFORMATION OBTAINED FROM THE COUNTY TAX ASSESSOR SHOWS
       THE SITUS ADDRESS ON SAID LAND AS 37275 WYNDHAM RD, PALM DESERT, CA AND THE
       PARCEL NO./PROPERTY ID NO. AS 748-020-061-2.

14.    ANY BANKRUPTCY PROCEEDING THAT IS NOT DISCLOSED BY THE ACTS THAT WOULD
       AFFORD NOTICE AS TO SAID LAND, PURSUANT TO TITLE 11 U.S.C. 549 (C) OF THE
       BANKRUPTCY REFORM ACT OF 1978, AS AMENDED.

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

## INFORMATION FOR TRUSTEE

RELATIVE TO THE DEED OF TRUST SHOWN AS ITEM NUMBER 6 OF THIS GUARANTEE:

1.       THE TRUSTEE MUST OBSERVE THE REQUIREMENTS OF SECTION 2924b OF THE CIVIL CODE
         AS TO THE 'NOTICES' TO BE SENT TO THE TRUSTOR(S).   IF ADDRESS(ES) OF THE
         TRUSTOR(S) ARE NOT SHOWN IN SAID DEED OF TRUST, OR IF NO NOTICE HAS BEEN
         REQUESTED BY THE TRUSTORS IN SAID DEED OF TRUST, THIS CODE SECTION STATES THE
         PROCEDURE TO BE FOLLOWED AS TO 'NOTICES' IN SUCH CASES.  THE NAME(S) OF THE
         TRUSTOR(S) AND THE ADDRESS(ES), IF ANY, SHOWN IN SAID DEED OF TRUST ARE:

         JULIUS F. SCHILL
         37275 WYNDHAM ROAD
         PALM DESERT, CALIFORNIA 92211

         KAREN H. SCHILL
         37275 WYNDHAM ROAD
         PALM DESERT, CALIFORNIA 92211

2.       THE NAME(S) AND ADDRESS(ES) OF PERSON(S) WHO HAVE RECORDED REQUESTS, OTHER
         THAN THE ORIGINAL TRUSTOR(S), AS PROVIDED IN SECTION 2924b(a) AND 2924b(d) OF THE
         CIVIL CODE, FOR A COPY OF ANY RECORDED 'NOTICE OF DEFAULT' AND A COPY OF ANY
         RECORDED 'NOTICE OF SALE' ARE:

         NONE

3.       THE NAME(S) AND ADDRESS(ES) OF ADDITIONAL PERSON(S) WHO, AS PROVIDED BY
         SECTION 2924b(c)(1) AND (2) OF THE CIVIL CODE, ARE ENTITLED TO RECEIVE A COPY OF
         ANY RECORDED 'NOTICE OF DEFAULT' AND A COPY OF ANY RECORDED 'NOTICE OF SALE'
         ARE:

         GREENPOINT MORTGAGE FUNDING, INC.
         981 AIRWAY COURT, SUITE E
         SANTA ROSA, CA, 95403-2049
         (REFERS TO ITEM(S) 7)

         MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
         P.O. BOX 2026
         FLINT, MI 48501-2026
         (REFERS TO ITEM(S) 7)

         GREENPOINT MORTGAGE FUNDING, INC.
         C/O MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
         P.O. BOX 2026
         FLINT, MI 48501-2026
         (REFERS TO ITEM(S) 7)

         STATE CONTROLLER
         DIVISION OF COLLECTIONS
         BUREAU OF TAX ADMINISTRATION
         PROPERTY TAX POSTPONEMENT
         P.O. BOX 942850
         SACRAMENTO, CA 94250
         (REFERS TO ITEM(S) 8)

## Exhibit "B", Page 6 of 15

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

4.  THE NAME(S) AND ADDRESS(ES) OF STATE, FEDERAL AGENCIES OR THE INTERNAL REVENUE SERVICE WHICH, AS PROVIDED BY SECTION 2924b(c)(3) AND SECTION 2924b(c)(4) OF THE CIVIL CODE, ARE ENTITLED TO RECEIVE A COPY OF ANY RECORDED 'NOTICE OF SALE' ARE:

INTERNAL REVENUE SERVICE
ATTN: DAN CHAMBERS, M/S 5905
24000 AVILA RD.
LAGUNA NIGUEL, CA 92677
CONTACT: DAN CHAMBERS @ FAX #: 949-389-5004
(REFERS TO ITEM(S) 9, 10, 11)

STATE OF CALIFORNIA
FRANCHISE TAX BOARD
SPECIAL PROCEDURES SECTION
PO BOX 2952
SACRAMENTO, CA 95812-2952
(REFERS TO ITEM(S) 12)

5.  THE NAME(S) AND ADDRESS(ES) OF THE PERSON(S) DISCLOSED BY THE RECORDS EXAMINED, OTHER THAN THOSE TO WHOM 'NOTICE' IS REQUIRED BY SECTION 2924b OF THE CIVIL CODE, WHO MIGHT BE INTERESTED IN RECEIVING A COPY OF ANY RECORDED 'NOTICE OF DEFAULT' OR A COPY OF ANY RECORDED 'NOTICE OF SALE' ARE:

NONE

6.  CITY IN WHICH SAID LAND IS LOCATED:  (UNINCORPORATED AREA)

IF NOT IN A CITY, JUDICIAL DISTRICT IN WHICH SAID LAND IS LOCATED:

DESERT JUDICIAL DISTRICT

7.  LEGAL PUBLICATION:

PALM DESERT POST
P.O. BOX 459
82-632 B HIGHWAY 111
INDIO, CALIFORNIA 92201

TELEPHONE: 760 775-4200
FAX: 760 342-7128

PUBLISHED: THURSDAY

8.  ATTENTION IS CALLED TO THE SERVICEMEMBERS CIVIL RELIEF ACT OF 2003 (108 P.L. 189; 117 STAT. 2835; 2003 ENACTED H.R.100) AND AMENDMENTS THERETO AND THE MILITARY RESERVIST ACT OF 1991 (SEC. 800 TO 810, MILITARY VETERANS CODE) WHICH CONTAIN INHIBITIONS AGAINST THE SALE OF LAND UNDER A DEED OF TRUST IF THE OWNER IS ENTITLED TO THE BENEFITS OF SAID ACTS.

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

9.      ATTENTION IS CALLED TO THE FEDERAL TAX LIEN ACT OF 1966 (PUBLIC LAW 89-719)
        WHICH, AMONG OTHER THINGS, PROVIDES FOR THE GIVING OF WRITTEN NOTICE OF SALE
        IN A SPECIFIED MANNER TO THE SECRETARY OF THE TREASURY OR HIS OR HER
        DELEGATE AS A REQUIREMENT FOR THE DISCHARGE OR DIVESTMENT OF A FEDERAL TAX
        LIEN IN A NONJUDICIAL SALE, AND ESTABLISHES WITH RESPECT TO SUCH A LIEN A RIGHT
        IN THE UNITED STATES TO REDEEM THE PROPERTY WITHIN A PERIOD OF 120 DAYS FROM
        THE DATE OF ANY SUCH SALE.

10.     ATTENTION IS CALLED TO SECTION 2924b(c)(3) AND SECTION 2924b(c)(4) OF THE CIVIL
        CODE, WHICH AMONG OTHER THINGS, PROVIDES FOR THE GIVING OF WRITTEN NOTICE OF
        ANY RECORDED 'NOTICE OF SALE', IN A SPECIFIED MANNER, TO THE OFFICE OF ANY STATE
        TAXING AGENCY, IN SACRAMENTO, CA., WHICH HAS A 'NOTICE OF TAX LIEN' OF RECORD IN
        THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

11.     ATTENTION IS CALLED TO SECTION 2934a OF THE CIVIL CODE CONCERNING ANY
        'SUBSTITUTION OF TRUSTEE', REQUIRING THAT WHEN SUBSTITUTION IS BEING EFFECTED
        UNDER THE PROVISIONS OF THAT SECTION, 'NOTICE' BE SENT IN ACCORDANCE WITH THE
        REQUIREMENTS OF SECTION 2924b OF THE CIVIL CODE.



**Exhibit "B", Page 9 of 15**

# LSI TITLE COMPANY (CA)

### ISSUED BY FIDELITY NATIONAL DEFAULT SOLUTIONS
15661 RED HILL AVENUE, SUITE 201, TUSTIN, CALIFORNIA  92780
(949) 622-4200 • (800) 323-0165

## TRANSMITTAL

TO:

FRIDAY, DECEMBER 28, 2007

CALIFORNIA RECONVEYANCE COMPANY
9200 OAKDALE AVENUE, MAIL STOP N110612
CHATSWORTH, CA  91311

ATTN: BRENDA BATTEN

REF. NO.:          122137CA
GUARANTEE NO.:  27-092-01-120527
ORDER NO.:        M713725

PLEASE FIND ENCLOSED HEREWITH ITEMS CHECKED BELOW:

\_\_\_     CERTIFIED COPY

\_\_\_     OWNERS POLICY

\_\_\_     ALTA POLICY

\_\_\_     CORRECTED GUARANTEE, POLICY AND/OR ENDORSEMENT

\_X\_     PUBLICATION ENDORSEMENT

\_\_\_     PRELIMINARY REPORT

\_\_\_     SUPPLEMENTAL REPORT

\_\_\_     OTHER

MERRLYN AGUAS, TITLE OFFICER

# Exhibit "B", Page 10 of 15

ORDER NO: M713725                                    GUARANTEE NO: 27-092-01-120527

## PUBLICATION ENDORSEMENT

### LSI TITLE COMPANY (CA)
ISSUED BY FIDELITY NATIONAL DEFAULT SOLUTIONS
15661 RED HILL AVENUE, SUITE 201, TUSTIN, CALIFORNIA  92780
A CORPORATION, HEREIN CALLED THE COMPANY

REF. NO.:        122137CA
GUARANTEE NO.:  27-092-01-120527

THE COMPANY HEREBY ASSURES THE ASSURED THAT SUBSEQUENT TO THE DATE OF THE
GUARANTEE ISSUED UNDER THE ABOVE NUMBER, NO MATTERS ARE SHOWN BY THE RECORDS
REFERRED TO IN THAT GUARANTEE WHICH WOULD AFFECT THE ASSURANCES IN SAID
GUARANTEE OTHER THAN THOSE SHOWN IN PREVIOUS ENDORSEMENTS; MATTERS THAT MAY
BE DISCLOSED BY ANY FURTHER EXAMINATION OF ANY TAX, BOND OR ASSESSMENT RECORDS;
OR THE FOLLOWING:

 NO CHANGES

 BANKRUPTCY PROCEEDINGS THAT MAY IMPOSE AN AUTOMATIC STAY UNDER USC TITLE 11,
 CHAP. 362a, ET SEQ., AFFECTING THE RECORD BENEFICIAL INTEREST OF ANY OF THE
 FOLLOWING LENDERS AND THEIR RELATED ENTITIES, IF APPLICABLE:

          RESMAE MORTGAGE CORPORATION
          OWNIT MORTGAGE SOLUTIONS
          MORTGAGE LENDER'S NETWORK
          PEOPLE'S CHOICE HOME LOAN
          NEW CENTURY FINANCIAL

THIS PUBLICATION ENDORSEMENT IS MADE A PART OF SAID GUARANTEE AND IS SUBJECT TO
THE LIABILITY EXCLUSIONS AND LIMITATIONS CONTAINED THEREIN.  THE TOTAL LIABILITY OF
THE COMPANY UNDER SAID GUARANTEE AND UNDER THIS ENDORSEMENT SHALL NOT EXCEED,
IN THE AGGREGATE, THE AMOUNT STATED IN SAID GUARANTEE.

DATED AS OF DECEMBER 26, 2007  @ 7:30 A.M., IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA.

LSI TITLE COMPANY (CA)

MERRLYN AGUAS, TITLE OFFICER

## Exhibit "B", Page 11 of 15

## LSI TITLE COMPANY (CA)

ISSUED BY: LSI TITLE COMPANY, INC.
15661 RED HILL AVENUE, SUITE 201, TUSTIN, CALIFORNIA  92780
(949) 622-4200 • (800) 323-0165

## TRANSMITTAL

TO:                                             FRIDAY, FEBRUARY 01, 2008

CALIFORNIA RECONVEYANCE COMPANY
9200 OAKDALE AVENUE, MAIL STOP N110612
CHATSWORTH, CA  91311

ATTN: JIM GOLDBERG

REF. NO.:          122137CA
GUARANTEE NO.: 27-092-01-120527
ORDER NO.:        M713725

PLEASE FIND ENCLOSED HEREWITH ITEMS CHECKED BELOW:

__    CERTIFIED COPY

__    OWNERS POLICY

__    ALTA POLICY

__    CORRECTED GUARANTEE, POLICY AND/OR ENDORSEMENT

_X_   SALE ENDORSEMENT

__    PRELIMINARY REPORT

__    SUPPLEMENTAL REPORT

__    OTHER

MERRLYN AGUAS, TITLE OFFICER

ORDER NO: M713725

GUARANTEE NO: 27-092-01-120527

## SALE ENDORSEMENT

### LSI TITLE COMPANY (CA)
ISSUED BY: LSI TITLE COMPANY, INC.
15661 RED HILL AVENUE, SUITE 201, TUSTIN, CALIFORNIA  92780
A CORPORATION, HEREIN CALLED THE COMPANY

REF. NO.:         122137CA
GUARANTEE NO.: 27-092-01-120527

THE COMPANY HEREBY ASSURES THE ASSURED THAT SUBSEQUENT TO THE DATE OF THE GUARANTEE ISSUED UNDER THE ABOVE NUMBER, NO MATTERS ARE SHOWN BY THE RECORDS REFERRED TO IN THAT GUARANTEE WHICH WOULD AFFECT THE ASSURANCES IN SAID GUARANTEE OTHER THAN THOSE SHOWN IN PREVIOUS ENDORSEMENTS; MATTERS THAT MAY BE DISCLOSED BY ANY FURTHER EXAMINATION OF ANY TAX, BOND OR ASSESSMENT RECORDS; OR THE FOLLOWING:

A NOTICE OF TRUSTEE'S SALE UNDER SAID DEED OF TRUST

| | | |
|---|---|---|
| DATE AND TIME OF SALE | : | JANUARY 16, 2008 AT 2:30 P.M. |
| RECORDED | : | DECEMBER 31, 2007 AS INSTRUMENT NO. 2007-0772002, OFFICIAL RECORDS |
| SAID MATTER AFFECTS | : | ITEM 6 OF OUR TRUSTEE'S SALE GUARANTEE. |

BANKRUPTCY PROCEEDINGS THAT MAY IMPOSE AN AUTOMATIC STAY UNDER USC TITLE 11, CHAP. 362a, ET SEQ., AFFECTING THE RECORD BENEFICIAL INTEREST OF ANY OF THE FOLLOWING LENDERS AND THEIR RELATED ENTITIES, IF APPLICABLE:

RESMAE MORTGAGE CORPORATION
OWNIT MORTGAGE SOLUTIONS
MORTGAGE LENDER'S NETWORK
PEOPLE'S CHOICE HOME LOAN
NEW CENTURY FINANCIAL

## Exhibit "B", Page 13 of 15

ORDER NO: M713725                                  GUARANTEE NO: 27-092-01-120527

THIS SALE ENDORSEMENT IS MADE A PART OF SAID GUARANTEE AND IS SUBJECT TO THE
LIABILITY EXCLUSIONS AND LIMITATIONS CONTAINED THEREIN.  THE TOTAL LIABILITY OF THE
COMPANY UNDER SAID GUARANTEE AND UNDER THIS ENDORSEMENT SHALL NOT EXCEED, IN
THE AGGREGATE, THE AMOUNT STATED IN SAID GUARANTEE.

DATED AS OF JANUARY 22, 2008   @ 7:30 A.M., IN THE COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA.


LSI TITLE COMPANY (CA)




MERRLYN AGUAS, TITLE OFFICER

Exhibit "B", Page 14 of 15

M713725/TS#122137CA/After Sale Date Down

Page 1 of 2

## Bernal, Carlos

| | |
|---|---|
| **From:** | Palencia, Saul [spalencia@fnds.com] |
| **Sent:** | Tuesday, February 12, 2008 3:43 PM |
| **To:** | Bernal, Carlos |
| **Subject:** | RE: M713725/TS#122137CA/After Sale Date Down |
| **Attachments:** | m713725.PDF |

Hi Carlos,

No changes.  No TDUS recorded yet.  Please open the attachment.

thank you

Saul Palencia
Fidelity National Title
Phone 949-622-4217 direct
Fax    949-622-3999

**From:** Bernal, Carlos [mailto:carlos.bernal@wamu.net]
**Sent:** Tuesday, February 12, 2008 9:03 AM
**To:** madatedowns@fnds.com
**Subject:** M713725/TS#122137CA/After Sale Date Down

Please complete an After Sale Date Down including TDUS recording information. Can I have a copy of Item # 7, 8 &12 from the TSG?

Thanks


Carlos Bernal

Asset Recovery Specialist, Sr.

Home Loans

California Reconveyance Company

9200 Oakdale Avenue-N110612

Chatsworth, CA 91311

(818) 775-4052

(818) 775-2510 (fax)

carlos.bernal@wamu.net

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

02/19/2008

# Exhibit "B", Page 15 of 15

**California Reconveyance Company**
PO BOX 6200
Northridge, CA 91328-6200

February 26, 2008

RE:Trustee's Sale #:   122137CA
      Owners:   JULIUS F. SCHILL AND KAREN H. SCHILL, HUSBAND
AND WIFE
      Loan No.:   0026549295

Dear Possible Claimant:

On 01/22/2008, this office conducted a Trustee's Sale with respect to property, commonly known and numbered as 37275 WYNDHAM ROAD, PALM DESERT, CA 92211, described in a Deed of Trust executed by JULIUS F. SCHILL AND KAREN H. SCHILL, HUSBAND AND WIFE, and recorded 09/24/1999, Book , Page , Instrument 1999-427709, RIVERSIDE County, California. At said Trustee's Sale surplus proceeds were realized.

Public records disclose that you may be a former owner of, may have had a former claim of interest in, or may have had a former lien against the foreclosed property which would possibly permit you to make a claim which you may believe entitles you to receive payment from these surplus funds.

Effective, January 1, 2005, California Civil Code Section 2945.3 (h) requires certain disclosures be made to former owners of real property who may be entitled to surplus funds from a foreclosure sale of their real property. The Notice set forth in Civil Code Section 2945.3 (h) states:

You may be entitled to receive all or a portion of the surplus funds generated from the foreclosure sale of your real property without paying any fees or costs of any kind to a third party. You should check directly with the trustee or beneficiary who conducted the foreclosure sale of your property to determine the name, address, and telephone number of the party to whom you can direct inquiries regarding filing a claim for surplus funds without paying a fee to a third party. No person or entity may require you to enter into any agreement requiring the payment of a fee to that person or entity in order to receive the surplus funds from the foreclosure sale to which you may be entitled during the 65 days after the date of the trustee's sale.

**Exhibit "C", Page 1 of 2**

TS # 122137CA
Page 2

Before funds are disbursed, you are requested to submit a written claim. See attached Statement of Claim executed under penalty of perjury, stating the following:

A.  Amount of claim to date of Trustee's Sale; and
B.  An itemized statement of principal, interest and other charges,
C.  Assignment of Deed of Trust/Power of Attorney, if applicable, and
D.  Original Promissory Note and Deed of Trust, or
E.  If you were the former property owner or claimant of an interest other than as a lienholder at the time of sale, a statement of the basis for your claim.

Our counsel, Kirby & McGuinn, c/o Tina Floros, must receive your documentation within 30 days after the date of this letter. The address is 600 B Street, Suite 1950, San Diego, CA 92101 – (619) 398-3375.

A reasonable attempt will be made after Kirby & McGuinn receive your written claim to determine the probable validity and priority of your claim. If it appears that your claim may be valid and prior to any other claim, they will advise you what further documents they will require in order to make disbursement to you.

In the event Kirby & McGuinn are unable to determine the validity and priority of the claims or in the event of conflict between potential claimants, the surplus proceeds may be deposited with a Superior Court of the State of California. The surplus funds are subject to fees, incurred with respect to or arising out of the sale of the property, the investigation of claims and disbursement of the funds, and as applicable, the deposit of such funds with the Court.

If you do not claim any of these surplus funds, please notify Kirby & McGuinn in writing.

Sincerely,

CALIFORNIA RECONVEYANCE COMPANY


CARLOS BERNAL
ASSET RECOVERY SPECIALIST SR
818-775-4052


Regular/Certified Mail

**Exhibit "C", Page 2 of 2**



# JOHN CHIANG
## California State Controller

March 5, 2008

Carlos Bernal
California Reconveyance Company
P.O. Box 6200
Northridge, CA 91328

Re:  Trustee Sale No.122137CA/Loan No. 0026549295/ID No.Schill (33)

Dear Carlos Bernal:

The State Controller's Office wishes to advise you that the State of California claims a lien for postponed property taxes, junior in recording priority to the Deed of Trust, recorded 09/24/1999, Instrument No. 1999-427709, Riverside County Records. A Notice of Default and Election to Sell has been recorded in the Office of the County Recorder of said County and a Notice setting the time, date, and place of said sale has been given.

The State Controller hereby demands, up to and including the amount shown on the attached statement, any surplus proceeds which may arise as a result of such sale.

If you have any questions, please contact this office toll free at the telephone number 1-800-952-5661.

Sincerely,

KATHRYN MCBRIDE
Associate Land Agent

Enclosures

Bureau of Tax Administration
Property Tax Postponement Program
P.O. Box 942850, Sacramento, CA  94250-5880 (800) 952-5661

## Exhibit "D", Page 1 of 6

STATEMENT AND INSTRUCTION SHEET

## INSTRUCTIONS

1. To insure that credit is applied to the proper account, make certain the property address and claimant's name appears on the FRONT of the check or money order.

2. Make the check or money for the TOTAL AMOUNT DUE (see schedule below), payable to the STATE CONTROLLER.

3. Detach and send the bottom portion of this page with your remittance to:

JOHN CHIANG, CALIFORNIA STATE CONTROLLER
BUREAU OF TAX ADMINISTRATION
P. O. BOX 942850
SACRAMENTO,CA 94250-5880

ATTN:  Property Tax Postponement Program

RETAIN THIS PORTION
-------------------------DETACH HERE-------------------------
RETURN THIS PORTION WITH YOUR REMITTANCE

### SURPLUS PROCEEDS FROM TRUSTEE SALE

| MONTH | POSTPONED AMOUNT | INTEREST DUE | RECORDING FEE | TOTAL AMOUNT DUE |
|---|---|---|---|---|
| On 01/22/08 | $3,953.94 | $136.65 | $11.00 | $4,101.59 |

NAME OF CLAIMANT:     Karen Schill          CO:     33

PROPERTY ADDRESS:     37275 Wyndham Rd.

                      Palm Desert, CA 92211

PARCEL NUMBER:        748020061 (33)

AMOUNT ENCLOSED_____

**Exhibit "D", Page 2 of 6**

```
PROCESS DATE : 01/01/08                          ACCOUNTS RECEIVABLE REGISTER
  ACCOUNT NUMBER   :        SCHILL              COUNTY : (33) RIVERSIDE              CLAIMANT NAME   : SCHILL      KAREN
  ELIGIBILITY TYPE : (A) SENIOR CITIZEN         SPOUSE NAME : JERRY                  CLAIMANT SSN    :
  OWNERSHIP TYPE   : (A) FEE                    SPOUSE SSN  :.                       CLAIMANT BIRTHDAY :
  PRORATE PERCENT  : 00%                                                            LATEST CERTIFICATE FISCAL YEAR : 06/07
    IN CARE OF     :
  MAILING ADDRESS  : 37275 WYNDHAM ROAD                              SITUS ADDRESS :
                     PALM DESERT        CA  92211
  PARCEL NUMBERS   : 748020061
```

```
                                              CERTIFICATE SECTION
                                    -------------- 1ST CERTIFICATE ------------  -------  2ND CERTIFICATE ------
FISCAL  CERT  SUPP   ISSUE   COUNTY  CITY  TIMELY               REDEEMED  REDEEMED   PRIOR YR             REDEEMED  REDEEMED
YEAR    TYPE  CODE   DATE    CODE    CODE  CODE    NUMBER       DATE      AMOUNT     REDEEM AMT   NUMBER  DATE      AMOUNT
------  ----  ----   ------  ------  ----  -----   ------       --------  --------   ----------   ------  --------  --------
06/07    0     0    10-26-06   33     0      1    50740715    12-28-06   1,976.97        .00    50740716 12-28-06  1,976.97
```

```
                                              DEBIT/CREDIT SECTION
                                                             PRINCIPAL                                          FISCAL
        EFFECTIVE  TRANS  REFERENCE   PROCESS   TRANSACTION  FISCAL  SUBJECT TO   TOTAL                          YEAR
        DATE       CODE   WARRANT #   DATE      AMOUNT       YEAR    INTEREST.    PRINCIPAL    INTEREST   FEE.   BALANCE
        ---------  -----  ---------   -------   -----------  ------  -----------  ----------   --------   -----  --------
APPLIED: 12-28-06   05    00000000   79-09-09       10.00   06/07                      .00        .00    .00
NEW BAL:                                                                    .00    3,953.94        .00  10.00   3,963.94
        GENERATED AS OF REDEEMED DATE 061228 PENDING RECEIPT OF LIEN DOCUMENT
CURRENT ACCOUNT BALANCE:                                                3,953.94    3,953.94    136.65  10.00   4,100.59
```

```
                                              PAYOFF SECTION
                        ------- JANUARY --------  ------ FEBRUARY -------  -------- MARCH ---------
FISCAL  INTEREST  TOTAL        CURRENT   CURRENT  PROJECTED   PROJECTED   PROJECTED   PROJECTED              CASH OVER
YEAR    RATE      PRINCIPAL    INTEREST  PAYOFF   INTEREST    PAYOFF      INTEREST    PAYOFF       FEE       PAYMENT
------  --------  ---------    --------  -------  ---------   ---------   ---------   ---------    -----     ---------
06/07     4%      3,953.94     136.65    4,090.59   145.82   4,103.76      162.99     4,116.93     11.00          .00

SUB-TOTAL         3,953.94     136.65    4,090.59   149.82   4,103.76      162.99     4,116.93                    .00
FEES                                               11.00                  11.00                   11.00
TOTAL             3,953.94     136.65    4,101.59   149.82   4,114.76      162.99     4,127.93                    .00
```

```
                                              MISCELLANEOUS
---------- LIEN INFORMATION -----------                                   ------------------ TRANSFER INFORMATION ------------------
        INITIAL   DATE       DATE        PTA                   ORIGINAL            ORIGINAL CLAIMANT             TRANSFER
FLAG    DATE      RECORDED   RELEASED    REFUND DUE            CLAIMANT SSN   1ST INITIAL/MIDDLE INITIAL         DATE
----    -------   --------   --------    ----------            ------------   --------------------------        --------
 Y      02-14-07  02-22-07                  0.00
---------- IMPOUND INFORMATION -----------
        BEGIN     END        IMPOUND                                                                            CLOSE
FLAG    DATE      DATE       AMOUNT                  PRIOR YTD INTEREST     CURRENT YTD INTEREST                 DATE
----    -------   --------   -------                 ------------------     --------------------                --------
 N                             .00                          .00                   .00                           00-00-80
```

RECORDING REQUESTED BY
STATE CONTROLLER
STATE OF CALIFORNIA

    WHEN RECORDED MAIL TO:
STEVE WESTLY, State Controller
Division of Collections
Bureau of Tax Administration
Property Tax Postponement
P.O. Box 942850
Sacramento, CA 94250
    1-800-952-5661

DOC # 2007-0122787
02/22/2007 08:00A Fee:NC
Page 1 of 1
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF LIEN FOR POSTPONED PROPERTY TAXES
*(Filed pursuant to Section 16182 of Chapter 5 of Part 1 of Division 4 of Title 2 of the Government Code)*

M
036
C36

ALL OWNERS OF RECORD
KAREN H. SCHILL, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

| OWNER-CLAIMANT NAME | ASSESSOR'S PARCEL NUMBER | COUNTY |
|---|---|---|
| KAREN SCHILL | 748020061-2 | 33 |
| PROPERTY ADDRESS | | |
| 37275 WYNDHAM ROAD | | |
| PALM DESERT, CA 92211 | | |

LEGAL DESCRIPTION
LOT 201 OF TRACT NO. 28243, AS SHOWN BY MAP ON FILE IN BOOK 267, PAGES 55 THROUGH 63, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

I, JOHN CHIANG, Controller of the State of California, do hereby certify that property taxes have been paid by the State of California on behalf of the Owner-Claimant of the herein described real property against which this lien is recorded. Such lien shall remain a lien until a full release and discharge is made pursuant to the provisions of Chapter 5 of Part 1 of Division 4 of Title 2 of the Government Code.

DATED   February 14, 2007

at RIVERSIDE,   California

JOHN CHIANG, CALIFORNIA STATE CONTROLLER
BY (AUTHORIZED DELEGATE OF THE CONTROLLER)

*Nicole D Kates*

NICOLE KATES, DEPUTY

## Exhibit "D", Page 4 of 6

## STATEMENT OF CLAIM – JUNIOR LIENHOLDER

Re:
Trustor: JULIUS F. SCHILL AND KAREN H. SCHILL, HUSBAND AND WIFE
Our File No.: 122137CA
Loan No.: 0026549295

Claimant: _State Controller's Office - Property Tax Postponement_
Address: _P.O. Box 942850, Sacramento, CA 94250-5880_
Phone No. _916-445-5229_     Your Reference No.: _74802006/(33) Schill_

This affidavit is issued pursuant to California Code § 2924(j).
The undersigned, being duly sworn, depose(s) and say(s):

1.  The undersigned was the junior lien holder of the property located **37275 WYNDHAM ROAD PALM DESERT, CA 92211** **RIVERSIDE** County, State of California.

2.  A Claim is hereby made for the Surplus Funds as follows:
    Unpaid Principal Balance $ _3,953.94_.
    Calculated interest from _____ up to and including sale date
    _____01/22/2008_____ in the amount of $ _136.65_.
    Uncollected late fees $_____. Other charges/attorney fees $ _11.00_

    Total payoff due claimant(s) $ _4,101.59_.

### Required Attachments:
_✓_ Itemized Statement.
_✓_ Payment history showing all the transactions of the amount owed up to the sale date.
_✓_ Original Note, Deed of Trust as per CA Civil Code 2924(j). _Lien_
_____ Assignments, if applicable.

I/we declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

Dated: _3/07/08_     By: _Keitryn McBride_



**Exhibit "D", Page 5 of 6**

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____
Signature of Document Signer No. 1

_____
Signature of Document Signer No. 2 (if any)

State of California

County of Sacramento

Subscribed and sworn to (or affirmed) before me on this

7th day of March, 2008, by

(1) Kathryn McBride,
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2) _____,
Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
Signature of Notary Public

PAMELA KEMP
Commission # 1512642
Notary Public - California
Sacramento County
My Comm. Expires Sep 11, 2008

Place Notary Seal Above

──────────────── **OPTIONAL** ────────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

Exhibit "D", Page 6 of 6

# FAX Transmission
# Cover Sheet

Date: 4/7/08

**To:** Tina Floros                                              Mail Stop: _____

Address/Organization: _____

FAX Number: 619-685-4004                    Office Phone: _____

**From:** Dan Chambers                                          Mail Stop: _____

Address/Organization: _____

FAX Number: 949-389-5004              Office Phone: _____

Number of pages:    | 4 |    *Including cover sheet*

Per request for Demand letter

_____

_____

_____

_____

_____

_____

_____

_____

_____

*Please visit us on the intranet at **http://publish.no.irs.gov** to obtain information about every nationally numbered product published by the Internal Revenue Service. If you are not an IRS employee, visit the IRS homepage at **www.irs.gov** to obtain current information about the IRS and its service.*

This communication is intended for the sole use of the individual to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this communication is not the intended recipient or the employee or agent for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone call, and return the communication at the address above via the United States Postal Service. Thank you.

Form **10321** (6-2000)          Catalog Number 23436C          Department of the Treasury-Internal Revenue Service
                                                               publish.no.irs.gov

## Exhibit "E", Page 1 of 5

**Internal Revenue Service**                                        **Department of the Treasury**

Date:
April 07, 2008

Kirby & McGuinn
Attn: Tina Floros
600 B Street, Suite 1950
San Diego, CA 92101

Payoff Number:
  CAL009-358
Person to Contact:
  D. Chambers
Employee Identification Number:
  33-01819
Telephone Number:
  949-389-4122
Taxpayer Identification Number:
  xxx-xx-6601

Notice(s) of Federal Tax Lien was/were filed in Riverside County, CA (County(s)/State) for the tax liabilities listed below on Julius & Karen Schill, 37275 Wyndham Road, Palm Desert, CA 92211.

| Type of Tax | MFT | Tax Period | Name Control | Unpaid Balance | Statutory Additions to: 01/22/2008 | | Total |
|---|---|---|---|---|---|---|---|
| | | | | | Penalty | Interest | |
| 1040 | 30 | 12/31/1992 | SCHI | $444,300.74 | $0.01 | $290,057.29 | $734,358.04 |
| 1040 | 30 | 12/31/1994 | SCHI | $10,555.98 | | $6,181.32 | $16,737.30 |
| 1040 | 30 | 12/31/1995 | SCHI | $4,176.55 | | $2,411.29 | $6,587.84 |

The amount needed to release the lien(s) is $757,683.18. A Certificate of Release of Federal Tax Lien will be issued immediately only if payment is made by 05/07/2008 using one of the following methods of payment:

1. Cash; or
2. Certified or cashier's check; or
3. Treasurer's check drawn on a national / state bank or trust company; or
4. Postal or bank money order.

Please make your check or money order payable to the **United States Treasury**. So that we can properly apply your payment, send your payment with a copy of this letter to:
    Internal Revenue Service, Attn: Dan Chambers
    24000 Avila Rd, MS 5905,
    Laguna Niguel, CA 92677

If the payment is made in any other form, the release will be delayed for 15 days or until evidence is furnished that the funds have been transferred.

If you should have any questions, please contact the person whose name and telephone number appears at the top of this letter.

Sincerely,

Andrew Jones

Letter 3641 (5-2005)
Catalog Number: 35217J

04/07/08  MON 14:41  [TX/RX NO 8630]  ☑002

# Exhibit "E", Page 2 of 5

RECORDING REQUESTED BY:

Internal Revenue Service

AND WHEN RECORDED MAIL TO:

Internal Revenue Service
P.O. Box 30216
Laguna Niguel, CA 92607



DOC # 2001-048928
02/06/2001 08:00A Fee:9.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

THIS SPACE RESERVED FOR RECORDER ONLY

| Form 668 (Y)<br>(Rev. October 1993) | 59543 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | | M |

Area: SMALL BUSINESS/SELF EMPLOYED AREA #14
(949) 389-4225       Serial Number: 330184304

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and right to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer   JERRY SCHILL
                   AKA JULIUS SCHILL

Residence   37275 WYNDHAM ROAD
            PALM DESERT, CA 92211

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1990 | 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N | 02/07/2000 | 03/09/2010 | 231,530.08 |
| 1040 | 12/31/1991 | 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N | 02/07/2000 | 03/09/2010 | 57,731.85 |

| Place of Filing | COUNTY RECORDER<br>RIVERSIDE COUNTY<br>RIVERSIDE, CA  92502-0751 | | Total | $ | 289,261.93 |

This notice was prepared and signed at  LAGUNA NIGUEL, CA                                       , on this,

the  02nd  day of  February , 2001 .

| Signature<br>for K BIRCH  L. Alvarado | Title Revenue Officer<br>(949) 389-4082 | 33-01-2721 |

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev Rul 71 466, 1971 2 C B 409)                                              Form 668(Y)(Rev. 10-93)

**Exhibit "E", Page 3 of 5**

RECORDING REQUESTED BY:

Internal Revenue Service

AND WHEN RECORDED MAIL TO:

Internal Revenue Service
P.O. Box 30216
Laguna Niguel, CA 92607

DOC # 2001-081126
02/14/2001 08:00A Fee:8.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|---|---|---|---|---|---|---|
| A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

**Form 668 (Y)**
(Rev. October 1993)    59515    Department of the Treasury - Internal Revenue Service

AMENDED    **Notice of Federal Tax Lien**    AMENDED

| M |
|---|
| SF |

Area: SMALL BUSINESS/SELF EMPLOYED AREA #14    Serial Number:
(949) 389-4225                                      330184830

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer    JULIUS SCHILL

Residence    37275 WYNDHAM RD
             PALM DESERT, CA 92211-2156

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 NOTE: | 12/31/1994 THIS LIEN HAS ON THE NOTICE AS INSTRUMENT ORIGINAL LIEN AND EFFECT. | 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 BEEN FILED FOR OF FEDERAL TAX NUMBER*********2001-017315 FILING WAS CORRECT AND THAT | 11/13/2000 THE PURPOSE OF LIEN THAT WAS | 12/13/2010 CORRECTING THE PREVIOUSLY RECORDED INSTRUMENT REMAINS | 10,543.98 "Name of Taxpayer" ON 01/16/2001 ALL OTHER INFORMATION ON THE IN FULL FORCE |

Place of Filing    COUNTY RECORDER
                   RIVERSIDE COUNTY
                   RIVERSIDE, CA  92502 0751    Total  $   10,543.98

This notice was prepared and signed at  LAGUNA NIGUEL  CA                              on this

the  28th  day of  February,  2001.

Signature                                    Title Revenue Officer
for R. BIETH  /s/ Alvarado                         29-01-3041

'NOTE: Certificate ...

Recording Requested By Internal Revenue
Service. When recorded mail to:

INTERNAL REVENUE SERVICE
24000 AVILA ROAD, MAIL STOP 5910
LAGUNA NIGUEL, CA 92677



DOC # 2002-694440
11/25/2002 08:00A Fee:7.00
Page 1 of 1
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

M
AG

For Optional Use by Recording Office

| Form 668 (Y)(c) | 1008 Department of the Treasury - Internal Revenue Service |
|---|---|
| (Rev. October 2000) | **Notice of Federal Tax Lien** |

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #14 | Serial Number |
|---|---|
| Lien Unit Phone: (949) 389-4225 | 102366202 |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer JULIUS F SCHILL

Residence   .38-180 DEL WEBB BLVD
PALM DESERT, CA 92211-1256

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1992 | 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 | 02/21/2000 | 03/23/2010 | 413624.21 |

| Place of Filing | | | |
|---|---|---|---|
| | COUNTY RECORDER<br>RIVERSIDE COUNTY<br>RIVERSIDE, CA 92502-0751 | Total $ | 413624.21 |

This notice was prepared and signed at _____LAGUNA NIGUEL, CA_____ , on this,
the ___04th___ day of ___November___ , 2002.

| Signature | Title |
|---|---|
| *L. Alvarado* | REVENUE OFFICER               34-05-3703 |
| for M. E. ASHTON III | (760) 322-1010 x1120 |

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60025X

**Exhibit "E", Page 5 of 5**

**KAREN SCHILL**
**37275 Wyndham Rd.**
**Palm Desert, Ca. 92211**
**Tel: (760) 360-7378**
**Email: dorfy59@earthlink.net**

May 26, 2008.

Kirby & McGuinn
600 B Street  Suite 1950
San Diego, Ca. 92101-4515

Ref: Your File Number: CAL009-358

Att: Jana Logan

Dear Ms. Logan

With reference to your above referenced file, please be advised that I am writing to you as sole General Partner of IICDG Family Limited Partnership, a Nevada entity.

As I have previously advised your client, California Reconveyance Company, IICDG asserts its claim to any surplus funds arising from the foreclosure sale of January 22, 2008

It is my contention that at the time the IRS and State Tax liens were filed, Julius Schill had no partnership interest in IICDG and IICDG believes that the surplus funds are its property and intends to aggressively litigate its claim to them.

Very truly yours,

Karen Schill,
General Partner
IICDG Family Partnership.



Recording Requested by

STATE OF CALIFORNIA
FRANCHISE TAX BOARD
Sacramento CA  95812-2952

And When Recorded Mail to

Special Procedures Section
PO BOX 2952
Sacramento CA  95812-2952



DOC # 2002-697302
11/25/2002 08:08A Fee:NC
Page 1 of 1
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      |     | COPY | LONG | REFUND | NCHG | EXAM |

M
DL

## NOTICE OF STATE TAX LIEN

FILED WITH:   RIVERSIDE                    CERTIFICATE NUMBER:   02316479144

The Franchise Tax Board of the State of California hereby certifies that the following named taxpayer(s) is liable under parts 10 or 11 of Division 2 of the Revenue and Taxation Code to the State of California for amount due and required to be paid by said taxpayer as follows:

Name of Taxpayer(s)      : JULIUS SCHILL


FTB Account Number       : 109266601

Social Security Number(s) : 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

Last Known Address       : 37275 WYNDHAM RD
                           : PALM DESERT  CA  92211-2156

For Taxable Years        : 1994,1993,1992,1991 1990

| TAX | PENALTY | INTEREST | COLLECTION FEES | PAYMENTS | ADJUSTMENTS | *TOTAL |
|-----|---------|----------|-----------------|----------|-------------|--------|
| 98077.00 | 17150.34 | 146592.14 | 11.00 | -170.62 | 0 | 261659.86 |

Further interest and fees will accrue at the rate prescribed by law until paid; that the Franchise Tax Board of the State of California complied with all of the provisions of parts 10 or 11 of Division 2 of the Revenue and Taxation Code of the State of California in computing, levying, determining and assessing the tax; the said amounts are due and payable and have not been paid. Said lien attaches to all property and rights to such property now owned or later acquired by the taxpayer.

IN WITNESS WHEREOF, the Franchise Tax Board of the State of California has duly authorized the undersigned to execute this Notice in its name.

DATED: 11/12/02                          FRANCHISE TAX BOARD
                                         of the State of California

Collection Bureau
Telephone Number: (916) 845-4350         By:

*Additional interest is accruing at the rate prescribed by law.

                                         Authorized facsimile signature.

FTB 2930 V1 MARCS (REV 02-2001)

## Exhibit "G", Page 1 of 2

Tina Floros

**From:** Antic-Jezildzic.AnaMarija [AnaMarija.Antic-Jezildzic@ftb.ca.gov]
**Sent:** Friday, May 09, 2008 1:44 PM
**To:** Tina Floros
**Subject:** TS#122137CA- Julius and Karen Schill

Per your request, I am sending you this email to advise you that the Franchise Tax Board will not be filing a claim to the excess proceeds that are available as a result of the trustee sale listed above.

Thanks, .

*AnaMarija Antic-Jezildzic*

*CAT*

*Collection Advisory Team*
*Ph. (916) 845-4371*
*Fax (916) 845-0137*

CONFIDENTIALITY NOTICE: This email from the State of California is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review or use, including disclosure or distribution, is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this email.

1

**Exhibit "G", Page 2 of 2**

## STATEMENT OF CLAIM

Re: Trustor: Julius F. Schill
Karen H. Schill
Trustee Sale No.: 122137CA
Loan No.: 26549295
Our File No.: CAL009-358

Claimant: _Countrywide Home Loans, Attn: Aimee Moo_
Address: _McCarthy + Holthus LLP, 1770 4th Ave., San Diego, CA 92101_
Phone No. _619-243-3935_   Your Reference No. _08-7407_

This affidavit is issued pursuant to California Civil Code § 2924j.
The undersigned, being duly sworn, depose(s) and say(s):

1. The undersigned was a junior lien holder secured by the property located at **37275 Wyndham Road , Palm Desert, CA, 92211, Riverside** County, State of California.
2. A Claim is hereby made of the Surplus Funds as follows:
   Unpaid Principal Balance $ _199,694.96_ .
   Interest calculated from _12/1/04_ up to and including sale date **January 22, 2008**
   in the amount of $ _14,601.37_ .
   Uncollected late fees $ _625_ .
   Other charges/attorney fees $ _0_ .
   Total payoff due claimant(s) $ _214,921.33_ .

## Required Attachments

✓ Itemized Statement
✓ Payment history showing all the transactions of the amount owed up to the sale date
✓ Original Note, Deed of Trust as per CA Civil Code § 2924j(a)(4)
✓ Assignments, if applicable

I/we declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: _6/17/08_   By: _[signature]_

State of _CA_
County of _San Diego_

On, _6/17/08_ before me, _D. Ingrande_ , a Notary Public, personally appeared _Aimee Moo_ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal. (This space for notary seal.)

_[signature]_

D. INGRANDE
COMM. #1765851
Notary Public - California
San Diego County
My Comm. Expires Sep. 7, 2011

## Exhibit "H", Page 1 of 20

Received (FRI) FEB 29 2008 15:03

| | | |
|---|---|---|
| Acct# | 68699593 | |
| Sale / Req Date | 1/22/2008  1/31/2008 | Calculate  10 |
| Trt Rate | 7 | |
| UPB | 199694.96 | Per Diem  38.2298 |
| | | Total  38.2.98 |

| | | |
|---|---|---|
| Interest Date | 2/1/2008  2/1/2008 | Calculate  0 |
| | ● Heloc  ○ CE2nd | Calculate  0.00 |
| Total Interest | | Calculate  382.98 |

| | |
|---|---|
| UPB | 199694.96 |
| Interest Payable | 14984.35 |
| Total Interest | 382.98 |
| Fees | 75.00 |
| Uncollected Fees Due | 550.00 |
| Termination Fee | 0.00 |
| Partial Balance | 0.00 |
| Disputed Amt Inc Int | 0.00 |
| Outstanding Aut/Tickets | 0.00 |
| Escrow Balance Due | 0.00 |
| Total  Calculate | 214921.33 |
| | Save  Cancel |

2/29/08

**Exhibit "H", Page 2 of 20**

MERS® Servicer Identification System - Results                    Page 1 of 1



**Process Loans, Not Paperwork™**

ServicerID
www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000138-0085363828-2    Note Date: 12/23/2004          MIN Status: Active

Servicer:  Countrywide Financial Corporation               Phone: (800) 669-6607
           Simi Valley, CA

Return to Search

For more information about MERS please go to www.mersinc.org

Copyright© 2006 by MERSCORP, Inc.

**Exhibit "H", Page 3 of 20**



DOC # 2004-1032727
12/30/2004 08:00A Fee:57.00
Page 1 of 17
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

Recording Requested By:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

And When Recorded Mail To:

GreenPoint Mortgage Funding, Inc.
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|------|------|-----|------|-------|-----|-------|
|   |   |   |      |      |     |      |       |     |       |
| A | R | L |      |      | COPY | LONG | REFUND | NCHG | EXAM |

57   T LA

*[Space Above This Line For Recording Data]*

MIN 100013800853638282
Loan Number: 0085363828

ACCOMMODATION ONLY 17-14 0001 WCS

# HOME EQUITY LINE OF CREDIT DEED OF TRUST
## Secondary Lien
### (Securing Future Advances)

Borrower has established a line of credit ("Home Equity Line of Credit") with Lender as evidenced by Borrower's Home Equity Line of Credit Agreement and Promissory Note dated the same date as this Security Instrument, and all renewals, extensions, modifications, replacements and substitutions thereof (collectively, the "Agreement"). Lender has agreed to make advances to Borrower under the terms of the Agreement. Such advances shall be of a revolving nature and may be made, repaid and remade from time to time. Borrower and Lender contemplate a series of advances to be secured by this Security Instrument. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time) shall not exceed Two Hundred Thousand and 00/100ths (U.S. $200,000.00) plus interest thereon (the "Credit Limit"). That sum is referred to in the Agreement as the Credit Limit. The entire indebtedness under the Agreement, if not paid earlier, is due and payable on January 1, 2030 or on such later date as may be permitted by Lender in writing, or at such earlier date in the event such indebtedness is accelerated in accordance with the terms of the Agreement and/or this Security Instrument.

This Document Filed for Recording by PLACER TITLE CO. as an ACCOMMODATION ONLY and has not been examined as to its execution or as to its affect upon the title

**DEFINITIONS**

Words used in multiple sections of this Security Instrument are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this Security Instrument are also provided in Section 15.

**(A)** "Security Instrument" means this Home Equity Line of Credit Deed of Trust, which is dated December 1, 2004, together with all Riders to this document.

**(B)** "Borrower" is Karen H. Schill, A Married Woman as Her Sole and Separate Property.
. Borrower is the trustor under this Security Instrument.

California Home Equity Line of Credit Deed of Trust—Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.— Page 1 of 14                                    53515CA 08/02
www.compliancesource.com                                         ©2002, The Compliance Source, Inc.



G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

(C)    "Lender" is GreenPoint Mortgage Funding, Inc..
Lender is a Corporation organized and existing under the laws of the State of New York. Lender's address is 100 Wood Hollow Drive, Novato, CA 94945.

(D)    "Trustee" is Marin Conveyancing Corp..

(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)    "Agreement" means the Home Equity Line of Credit Agreement and Promissory Note signed by Borrower and dated December 1, 2004. The Agreement states Lender has agreed to make advances to Borrower under the terms of the Agreement, such advances to be of a revolving nature. The total outstanding principal balance owing at any one time under the Agreement (not including charges and collection costs which may be owing from time to time under the Agreement) not to exceed the Credit Limit of Two Hundred Thousand and 00/100ths Dollars (U.S. $200,000.00) plus interest. Borrower has promised to pay the total outstanding balance in Periodic Payments and to pay the entire debt in full not later than January 1, 2030.

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Account" means the debt evidenced by the Agreement, plus interest, any other charges due under the Agreement, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Home Improvement Rider | ☐ Revocable Trust Rider | |
| ☐ Other(s) [specify] | | |

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,

the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Agreement and the Account.

(P)     "Periodic Payment" means the amount due from Borrower to Lender each month for (i) principal and/or interest under the Agreement, and all late charges and other charges provided herein or authorized by the Agreement, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to the escrow account requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Agreement and this Account do not qualify as a "federally related mortgage loan" under RESPA.

(R)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Agreement and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the prompt repayment of the Account evidenced by the Agreement, and all renewals, extensions and modifications of the Agreement, with interest thereon at the rate provided in the Agreement; (b) the payment of all other sums due under the Agreement, with interest thereon at the rate provided in the Agreement, (i) advanced to protect the security of this Security Instrument, (ii) incurred by Lender in connection with the enforcement of its rights under this Security Instrument and/or the Agreement, and/or (iii) required to be paid as set forth herein or in the Agreement; and (c) the performance of Borrower's covenants and agreements under this Security Instrument, the Agreement and any prior mortgage or deed of trust. .

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the County                                        of Riverside                                         :
                                   *[Type of Recording Jurisdiction]*              *[Name of Recording Jurisdiction]*
The land referred to herein is in the State of California, County of Riverside, Unincorporated Area, and is described as follows:
Lot 201 of Tract No. 28243, as shown by Map on file in Book 267, Pages 55 through 63, of Maps, Records of Riverside County, California.

Assessor's Identification Number: 748-020-061-2

which currently has the address of 37275 Wyndham Road
                                                                                        *[Street]*
Palm Desert                          , California 92211                       ("Property Address").
                        *[City]*                                 *[Zip Code]*

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                                    Page 3 of 14                                         5891CA 98/02
www.compliancesource.com                                                                                    ©2002, The Compliance Source, Inc.

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Agreement and if allowable under Applicable Law, any prepayment charges, late charges and other charges due under the Agreement. Payments due under the Agreement and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Agreement or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Agreement and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

2.   **Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Agreement or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied to the outstanding Account in the following order of priority:  (i) any prepayment charges due under the Agreement and/or this Security Instrument if permitted by Applicable Law; (ii) amounts due under this Security Instrument to secure the amounts advanced under the Account and to protect Lender's security; (iii) any escrow payments under Section 3 of this Security Instrument, if Lender requires such payments; (iv) any late charges; (v) any other fees and charges other than finance charges; (vi) accrued and unpaid finance charges due under the Agreement; and (vii) any unpaid principal balance due under the Agreement.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Agreement.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3.   **Funds for Escrow Items.** Subject to Applicable Law, Borrower shall pay to Lender on the days Periodic Payments are due under the Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Agreement, Lender may require that Community Association Dues, Fees,

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

**Exhibit "H", Page 7 of 20**

and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender the Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, to mean the amount by which a current escrow balance falls short of the target balance at the time of escrow analysis, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA to mean the amount of the negative balance in the escrow account, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4.   Charges; Liens.   Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

California Home Equity Line of Credit Deed of Trust—Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 5 of 14
58019CA 08/02
©2002, The Compliance Source, Inc.

GPMWD0085363828117

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with the Agreement, the Account and this Security Instrument, if allowed under Applicable Law.

5.    **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Agreement. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with the Agreement, the Account and this Security Instrument, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the Account and interest shall accrue at the rate set forth in the Agreement, from the time it was added to the unpaid balance until it is paid in full.

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement, up to the amount of the outstanding Account balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Agreement and the Account, up to the amount of the outstanding Account balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, and subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds, and shall be the sole obligation of Borrower. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, if the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Lender believes that Borrower has abandoned the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 6 of 14
52911CA 06/02
©2002, The Compliance Source, Inc.

GPMWD0085363 8281.17

**Exhibit "H", Page 9 of 20**

carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Agreement, the Account or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Subject to the rights of any holder of a mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument, Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Agreement, the Account or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. If the Property is damaged, unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Home Equity Line of Credit Application.** Borrower shall be in default if, during the home equity line of credit application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Agreement, the Account and this Security Instrument. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Lender believes that Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the rate set forth in the Agreement from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Agreement and the Account) for certain losses it may incur if Borrower does not repay the Account as agreed. Borrower is not a party to the Mortgage Insurance.

**Exhibit "H", Page 10 of 20**

If Lender required Mortgage Insurance as a condition of entering into the Agreement and establishing the Account, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or any part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged and if the restoration or repair is economically feasible and Lender's security is not lessened, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

If Lender believes that the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, then Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization, if applicable, of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization, if applicable, of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** When Borrower (as that term is defined above) includes more than one person, Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Agreement without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security

California Home Equity Line of Credit Deed of Trust—Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 8 of 14

58519CA 04/01
©2001, The Compliance Source, Inc.

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Account Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender shall have the authority to impose additional fees and charges to perform services requested by or on behalf of Borrower, or to otherwise administer and service the Agreement and the Account. The additional fees and charges may include administrative costs incurred by Lender and/or in reimbursement of payments made by Lender to third parties. Such fees and charges may include, without limitation, any and all costs or fees associated with the origination and/or servicing of such Agreement and the Account, document copy or preparation fees, transmittal, facsimile or delivery fees, reconveyance and release fees, property inspections and returned check or insufficient funds charged in connection with payments made by or on behalf of Borrower under the Agreement and all other such fees for ancillary services performed by Lender for Borrower or at Borrower's request or for services necessitated by or resulting from Borrower's default or malfeasance relating to this Security Instrument or the Agreement or incurred by Lender or assessed upon Borrower pursuant to the provisions of this Security Instrument or the Agreement. Such fees and charges shall be secured by this Security Instrument up to the amount of the Credit Limit and, unless Borrower and Lender agree to other terms of payment, shall bear interest from the date assessed by Lender at the rate stated in the Agreement, and in effect from time to time, and shall be payable, with interest, immediately following written demand from Lender to Borrower requesting payment thereof. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

If either the Agreement or the Account is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Agreement and the Account exceed the permitted limits, then: (a) any such charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to Borrower, which Lender may accomplish by reducing the principal owed under the Agreement or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Agreement). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower may have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Agreement conflicts with

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 9 of 14
58913CA 06/01
©2002, The Compliance Source, Inc.

Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Agreement and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Agreement as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of the Agreement and the Account; Change of Loan Servicer; Notice of Grievance.** The Agreement and the Account, or a partial interest in the Agreement and the Account (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Agreement and the Account. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Agreement and the Account are sold and thereafter the Agreement and the Account are serviced by a Loan Servicer other than the purchaser of the Agreement and the Account, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the purchaser of the Agreement and the Account unless otherwise provided by the purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto, a reasonable period after the giving of such notice to take

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

**Exhibit "H", Page 13 of 20**

corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section 19. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including, but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Events of Default; Acceleration; Remedies.** The occurrence of any one or more of the following events shall, at the election of Lender, constitute an "Event of Default," and shall entitle Lender to terminate the Agreement and the Account and accelerate the indebtedness secured hereby: (a) any Borrower engages in fraud or material misrepresentation, whether by action or omission, in connection with any phase of the Agreement; (b) Borrower fails to meet the repayment terms set forth in the Agreement; or (c) Borrower's action or inaction adversely affects the Property or Lender's security interest, including, but not limited to, Borrower's actions or omissions that constitute "Events of Default" under the Agreement, or Borrower's failure to perform any material covenants or agreements contained in this Security Instrument.

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies

California Home Equity Line of Credit Deed of Trust—Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 11 of 14
©2002, The Compliance Source, Inc.
52319CA 11/02

**Exhibit "H", Page 14 of 20**

of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon request from Borrower and upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes and agreements evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

25. **Obligation to Advance.** Lender's obligation to advance funds to Borrower upon and subject to the terms stated in the Agreement after receipt of a Credit Line Check or other request for an advance made in accordance with the Agreement shall be obligatory.

26. **Request for Notice of Default and Sale.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____ page _____ records of Riverside County, (or filed for record with recorder's serial number _____, Riverside County) California, executed by _____

_____ as trustor (or mortgagor) in which

_____, is named as beneficiary (or mortgagee) and

_____ as trustee

be mailed to Name **GreenPoint Mortgage Funding, Inc.** at Address **100 Wood Hollow Drive, Novato, CA 94945.**

Notice: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature _____

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

California Home Equity Line of Credit Deed of Trust—Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 12 of 14
58919CA 06/02
©2002, The Compliance Source, Inc.

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

**Exhibit "H", Page 15 of 20**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page two of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

──────────────────────────── *[Signatures on Following Page]* ────────────────────────────

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____    (Seal)
                                                 Karen H. Schill              -Borrower
Printed Name _____                                           Printed Name
                  *(Please Complete)*

_____          _____    (Seal)
                                                                             -Borrower
Printed Name _____                                           Printed Name
                  *(Please Complete)*

                                          _____    (Seal)
                                                                             -Borrower
                                                                             Printed Name

                                          _____    (Seal)
                                                                             -Borrower
                                                                             Printed Name

──────────────────── *[Space Below This Line For Acknowledgement]* ────────────────────

## Exhibit "H", Page 16 of 20

State of _CALIFORNIA_          §
County of _RIVERSIDE_          §
                              §
On _12/10/04_ before me, _VICKI S. JARVIS, NOTARY PUBLIC_, personally appeared
_KAREN H. Schill_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

(Seal)

VICKI S. JARVIS
Commission # 1362510
Notary Public - California
Riverside County
My Comm. Expires Jul 24, 2006

Notary Public

[Printed Name]

My Commission Expires:

California Home Equity Line of Credit Deed of Trust – Secondary Lien MERS Modified
—THE COMPLIANCE SOURCE, INC.—                          Page 14 of 14
www.compliancesource.com

52919CA 03/03
©2002, The Compliance Source, Inc.

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

Exhibit "H", Page 17 of 20

Loan Number: 0085363828

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **1st** day of **December, 2004** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to GreenPoint Mortgage Funding, Inc. (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**37275 Wyndham Road, Palm Desert, CA 92211**

*[Property Address]*

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Declaration of Covenants, Conditions, and Restrictions (the "Declaration"). The Property is a part of a planned unit development known as:

**Sun City-Palm Desert**

*[Name of Planned Unit Development]*

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—      Page 1 of 3      14501MU 04/00
www.compliancesource.com      ©2000, The Compliance Source, Inc.

GPMHD0085363828117

hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Multistate PUD Rider — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3150 01/01
—THE COMPLIANCE SOURCE, INC.—                                             Page 2 of 3                        14801MU 08/00
www.compliancesource.com                                                                              ©2000, The Compliance Source, Inc.

G P M W D 0 0 8 5 3 6 3 8 2 8 1 1 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)         _____ (Seal)
Karen H. Schill             -Borrower                                           -Borrower

_____ (Seal)         _____ (Seal)
                           -Borrower                                           -Borrower

*[Sign Original Only]*

**Exhibit "H", Page 20 of 20**

RECORDING REQUESTED BY:
LIVELY & ASSOCIATES

When Recorded Mail Document
and Tax Statement To:
LIVELY & ASSOCIATES
151 Kalmus Drive, Suite H9A
Costa Mesa, CA  92626

Escrow No. 5767
Title Order No.
APN:

```
DOC #  1999-498534
11/12/1999 08:00A Fee:0.00
          Page 1 of 3
Recorded in Official Records
     County of Riverside
        Gary L. Orso
Assessor, County Clerk & Recorder
```

**GRANT DEED**

The undersigned grantor(s) declare(s):
Documentary transfer tax is $_____ 0 _____  City tax $_____ 0
   [ ]  computed on full value of property conveyed, or
   [ ]  computed on full value less value of liens or encumbrances remaining at time of sale.
   [x]  Unincorporated Area   City of _____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, JULIUS F. SCHILL and
KAREN H. SCHILL, as Joint Tenants with Right of Survivorship.

**hereby GRANT(S) to**  IICDG FAMILY LIMITED PARTNERSHIP

the following described real property in the City of  PALM DESERT (unincorporated area)
**County of** Riverside                                                              **State of California:**
Lot 201 of Tract No. 28243, as shown by map on file in Book 267, Page(s) 55
through 63, of Maps, Records of Riverside County, California.

DATED:  November 10, 1999

Karen H. Schill

Julius F. Schill

STATE OF CALIFORNIA
COUNTY OF Orange
ON November 10, 1999 _____ before me,
Marilyn Carr _____ personally appeared
Karen H. Schill and Julius F. Schill

~~personally known to me~~ (or proved to me on the
basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the
instrument.

Witness my hand and official seal.

Signature _Marilyn Carr_

MARILYN CARR
Commission # 1198316
Notary Public - California
Orange County
My Comm. Expires Oct 11, 2002

MAIL TAX STATEMENT AS DIRECTED ABOVE

FD-13 (Rev 4/94)                          GRANT DEED

**Exhibit "I", Page 1 of 1**

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY :

*P.T.*

AND WHEN RECORDED MAIL TO :

*Placer Title Co.*
*37275 Wyndham Rd.*
*Palm Desert, Ca. 92211*

# 17-140006

TRA: 088.
DTT: Ø
APN: 748-020-061-2

*Grant Deed*

## TITLE OF DOCUMENT

DOC # 2004-1032726
12/30/2004 08:00A Fee:10.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S/ | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   |   |   |   |   |   | ✓ |   |   |   |
|   |   |   |   |   |   |   |   |   | UA |
| A | R | L |   |   | COPY | LONG | REFUND | NCHG | EXAM |

10

T
LA

# THIS AREA FOR RECORDER'S USE ONLY

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING IFORMATION
($3.00 Additonal Recording Fee Applies)

STC-SCSD 996a (Rev 8/97)

## Exhibit "J", Page 1 of 2

**Recording Requested By:**
Placer Title Company

**Mail tax statements to:**

**When Recorded Mail To:**
37275 Wyndham Road
Palm Desert, CA 92211
*TRA-018*

Title Order 17- 140006
Escrow: DEAL 140006

*17-140006 N C S*
**ACCOMODATION ONLY**

*CONVEYANCES GIVEN FOR NO VALUE*
The undersigned Grantor declares:
City Transfer Tax: $
Documentary Transfer Tax: $
☐ Computed on Full Value of Property Conveyed
☐ Computed on Full Value less Liens & Encumbrances
remaining at time of sale.

## GRANT DEED

FOR A VALUABLE CONSIDERATION, IICDG Family Limited Partnership

Hereby GRANT (S), KAREN H. SCHILL, a married woman, as her sole and separate property

The land referred to herein is in the State of California, County of Riverside, Unincorporated Area, and is described as follows:

Lot 201 of Tract No. 28243, as shown by Map on file in Book 287, Pages 55 through 63, of Maps, Records of Riverside County, California.

A.P.N. 748-020-061-2

This Document Filed for Recording by PLACER
TITLE CO. as an ACCOMMODATION ONLY
and has not been examined as to its execution
or as to its affect upon the title

Date: *12/10/04*

IICDG FAMILY LIMITED PARTNERSHIP    General Partner

State of CALIFORNIA
County of ( *Riverside* )

On *December 10, 2004* before me, *Vicki S. Jarvis*, Notary
Public personally appeared *Karen H. Schill*
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public in and for said County and State *CALIFORNIA*

VICKI S. JARVIS
Commission # 1362510
Notary Public - California
Riverside County
My Comm. Expires Jul 24, 2006

(Space above for official notarial area)

## Exhibit "J", Page 2 of 2